UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IH-27 INVESTMENTS, LLC and<br>1031 SERVICES CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>ACCEPTANCE INDEMNITY INSURANCE<br>COMPANY,<br><br>Defendant. | § § § § § § § § § § § § | CIVIL ACTION NO.: 2:23-CV-00044-Z |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs IH-27 INVESTMENTS, LLC and 1031 SERVICES CORPORATION (collectively "Plaintiffs") file this First Amended Complaint complaining of Defendant ACCEPTANCE INDEMNITY INSURANCE COMPANY ("Defendant") and for cause of action and will show the following:

## I.
## PARTIES

1. Plaintiff 1031 Services Corporation is a Texas For-Profit Corporation with its principal place of business in Randall County, Texas.

2. Plaintiff IH-27 Investments, LLC is a Texas limited liability company with its principal place of business in Randall County, Texas.

3. Defendant Acceptance Indemnity Insurance Company is a Nebraska corporation with its principal place of business in Raleigh, North Carolina. Defendant has previously appeared and may be served by and through its attorney of record.

## II.
## VENUE AND JURISDICTION

4. This Court has jurisdiction over the subject matter of this lawsuit pursuant 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5. This Court has personal jurisdiction over Defendant because Defendant purposely availed itself of the benefits of and protections of Texas law and established such minimum contacts with Texas that Defendant could reasonably anticipate being sued in Texas. Defendant markets and sells insurance policies to residents of the State of Texas and insures property in the State of Texas. Specifically, Defendant issued the insurance policy at issue in this lawsuit to Plaintiff 1031 Services Corporation, a Texas For-Profit Corporation, insuring property located in Texas. The causes of action asserted herein by Plaintiffs against Defendant arise from or relate to Defendant's contacts with the State of Texas. Defendant brought this case to this Court by virtue of its Notice of Removal (Doc. 1), thereby submitting to this Court's jurisdiction over it. This Court's exercise of personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

6. This lawsuit was removed by Defendant from the 47th Judicial District Court of Randall County, Texas. Venue is proper in Amarillo Division of the Northern District of Texas pursuant 28 U.S.C. § 1441(a) because the state court where the suit was pending is located in this district.

## III.
## FACTS

7. Defendant issued a Commercial General Liability and Commercial Property Policy Number CP00235035 to 1031 Services Corporation, effective August 19, 2019 to August 19, 2020

(the "Policy").[1] The Policy insured Plaintiffs' commercial property located at 4515 S Georgia Street in Amarillo, Randall County, Texas (the "Property"). 1031 Services Corporation was acting as a Qualified Intermediary for the benefit of IH-27 in connection with a reverse 1031 exchange in connection with the initial purchase of the Property and the acquisition of the Policy. IH-27 was the beneficial owner of the Property and additional insured on the Policy.

8.  On June 20, 2020, a weather event consisting of hail and wind damaged the Property covered by the Policy. Plaintiffs immediately reported to Defendant the damage to the Property and made a claim under the Policy through the Policy producing agent.

9.  Subsequently, Plaintiffs and Defendant engaged in negotiations regarding the scope of damage to the Property and applicable coverage under the Policy (the "Claim"). The Claim was initially assigned by Defendant to Bishop & Associates Claims and Catastrophe Services ("Bishop & Associates") who estimated the claim for repairs less depreciation in its report dated August 5, 2020. Bishop & Associates' estimate was woefully inadequate, and as such, Plaintiffs and Defendant continued their negotiations.

10. As a result of the parties' inability to reach an agreement on the amount of damages caused by and resulting from the wind and hail event, Plaintiffs invoked the Policy's appraisal provision by providing written demand of such to Defendant dated October 5, 2020 (the "Appraisal Demand"). The Appraisal Demand is attached hereto as Exhibit B.

---

[1] Relevant portions of the Policy are attached hereto as Exhibit A.

11. The Policy appraisal provision provides as follows:

   **Appraisal**

   > If we and you disagree on the value of the property or the amount of loss, either may make written demand for appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
   >
   > a. Pay its chosen appraiser; and
   > b. Bear the other expenses of the appraisal and umpire equally.
   >
   > If there is an appraisal, [Defendant] will still retain [its] right to deny the claim.

   *See* Ex. A.

12. Plaintiffs properly invoked the appraisal provision by providing the written Appraisal Demand to Defendant and designating Brady Owens of Alliance Construction & Consulting ("Mr. Owens") as Plaintiffs' competent and impartial appraiser. *See* Ex. B.

13. In response, Defendant designated its appraiser, Brett Lochridge of Unified Building Sciences, Inc. ("Mr. Lochridge"), who conducted his own estimate of damages to the Property.

14. As Mr. Owens and Mr. Lochridge were unable to come to an agreement on the scope and amount of repair estimates, Mr. Jim Filipowicz of Calvary Construction Company ("Mr. Filipowicz") was selected as the Umpire in accordance with the Policy.

15. Mr. Filipowicz and Mr. Owens signed an August 16, 2021 appraisal award (the "Award"), attached hereto as Exhibit C, based upon Mr. Filipowicz's estimate dated July 28, 2021 (the "Umpire's Estimate"), attached hereto as Exhibit D.

16. The Umpire's Estimate clearly expressed on its cover page the necessity of a new review if the City of Amarillo (the "City") would not permit the contemplated repairs:

> **Please note: This [Umpire's Estimate] presumes that the City of Amarillo will allow the repairs as outlined to proceed without triggering any code upgrades. Should there be code/building department issues with proceeding with the repairs as stated in this estimate a further review/supplement may be required.**

*See* Ex. D.

17.  This contingency was known and communicated by and between Mr. Owens, Mr. Filipowicz, and Mr. Lochridge in connection with their work in the appraisal process and ***before*** the execution of the Award, ***with the understanding that the Award would have to be revised in the event that the City would not permit the repairs as contemplated in the Award***. A series of emails by and between Mr. Owens, Mr. Filipowicz, and Mr. Lochridge is attached hereto as Exhibit E, establishing that both designated appraisers, including Lochridge, and Filipowicz ***were in agreement*** that the Award would have to be revised should the City not allow the repairs as contemplated. Specifically:

- August 9, 2021 – Mr. Owens in response to the Umpire's Estimate. "I would appreciate the language being added so that the loss be fully covered for when the [City] requires exactly of what their ordinance and law is stated." *See* Ex. E, pg. 4.

- August 10, 2021 – Mr. Lochridge responding, "I'm agreeable to adding language such as 'The valuation is based on the assumption that the repairs will not trigger code upgrades' or words to that effect? ***That preserves that issue if the City changes their mind***." *See* Ex. E, pg. 3 (emphasis added).

- August 10, 2021 – Mr. Owens responding, "Mr. Lochridge, Will you please check with your client on the language we plan on adding within the appraisal award, and provide to the panel in writing their response." "I want to have the best interest for my client, that the carrier will honor the language, that if for some reason the [City] will NOT allow repairs and calls for a full roof replacement to have the loss put back to pre-loss conditions that the panel will be able to address monetary figures on all these items." *See* Ex. E, pg. 3.

- August 11, 2021 – Mr. Lochridge responding, "[Mr. Owens], That is both my intent and I will let the carrier know that as well. ***You have this email to verify that. I would agree that if the City requires additional work beyond what we have spelled out then that would warrant a supplement and consideration in the claim.***" *See* Ex. E, pg. 2 (emphasis added).

- August 12, 2021 – Mr. Filipowicz states "Because of the conflicting info from the [City] building department, I have included language on the opening page of the [Umpire's Estimate] which addresses the possibility of code issues". See Ex. E, pg. 1.

18. Based on these communications and other communications between the appraisers, Mr. Filipowicz and Mr. Owens executed the Award with the understanding that the appraisers would revise the Award should the City not allow the repairs as contemplated by the Award.

19. Lochridge was acting as Defendant's independent adjuster and designated appraiser when he made and received the communications identified above during the appraisal process. Lochridge assured Owens and Filipowicz that the "issue" as to whether the City would require code upgrades requiring a full roof replacement (as opposed to the repair plan forming the basis of the Award) "would be preserved" if the City changes their mind. *See* Ex. E, pg. 3. To clarify the appraisers were all in agreement, Mr. Owens again asked Mr. Lochridge to confirm that if the City did not allow the repairs reflected in the Award, then there would be a review or supplement of the appraisal and Award, to which Mr. Lochridge affirmed that was "his intent" and specifically agreed that "***if the City requires additional work beyond what we have spelled out then that would warrant a supplement and consideration in the claim.***" *See* Ex. E, pg. 2 (emphasis added). Owens and Filipowicz relied upon Lochridge's assurance and representation in this regard when executing the Award; indeed, Filipowicz specifically references this "issue" in the Award by including language on the opening page of the Umpire's Estimate, as set forth above. Unfortunately, the City did, in fact, "change their mind" by failing to approve the repair plan forming the basis of the Award and, instead, requiring an entire new roof for the property at issue at a much higher cost than the repair plan made the basis of the Award.

20. Defendant takes the exact opposite position now from the position that it took during the appraisal process. Defendant denies that any "issue was preserved" concerning the City's requirement for the repair of the roof at issue. Defendant is equitably estopped from doing so. One who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other. Plaintiff relied upon Defendant's representation, made through Lochridge, to its detriment. The Award was entered in reliance upon the preservation of the issue concerning the City's requirements for the contemplated repairs, and the associated costs thereof, to the roof at issue in the appraisal.

21. Following the issuance of the Award, Plaintiffs contracted for Norton Roofing and Construction, Inc. ("Norton") to initiate the repairs as contemplated by the Award. Upon assessing the building and initiating repairs, Norton discovered that there was moisture in the roofing system as well as multiple roof systems with wood fiber attached with hot asphalt to the deck. As a result, the City pulled the permit for the repairs and required a complete reroof of the Property in accordance with city codes.

22. Mr. Owens then emailed Mr. Filipowicz and Mr. Lochridge requesting a meeting to discuss a revision to the Award based on the City's denial of the repairs as originally contemplated. *See* Ex. F. Mr. Owens' email indicates that he was of the understanding that all the appraisers contemplated this exact scenario prior to the entry of the Award and would revise the Award accordingly, "We had discussed this matter if it were to come up and we could address the issue at this time for appraisal." *See* Ex. F.

23. To Mr. Owens' and Plaintiffs' surprise, Defendant and Mr. Lochridge refused to participate in reviewing and revising the Award, even though the parties had agreed to this very contingency in rendering the initial Award. Mr. Lochridge attempted to cover his backtracking by telling Mr.

Brady that Plaintiffs needed to make a separate claim with Defendant regarding the additional costs of repair due to the City's refusal to allow the repairs contemplated in the Award. *See* Ex. F ("I think the policyholder needs to make that a claim to the carrier."). Mr. Owens strongly disagreed with Mr. Lochridge's statement that this scenario did not warrant revision to the Award. *See* Ex. F (Mr. Owens: "This was addressed when we were communicating within the appraisal, it was clarified that if the [City] would not allow the repairs to be made, then this would be addressed at this time!").

24. Plaintiff has been damaged by an Award establishing a woefully inadequate amount of loss. Not only is Defendant equitably estopped from changing its position, but it is also acting in bad faith by attempting to do so requiring Plaintiffs to bring this suit.

25. On or about September 21, 2022, Plaintiffs made written demand on Defendant setting forth the factual basis and details of the Claim, the Umpire's Estimate, the Award, and the City's permitting requirements which unquestionably triggered the contingency written on the cover of Umpire's Estimate. Defendant did not respond to the September 21, 2022 Demand Letter. On or about October 4, 2022, Plaintiffs again made written demand on Defendant setting forth the facts and details as enumerated in the September 21, 2022 Demand Letter. Once again, Defendant failed to respond or reply to Plaintiffs' extension for settlement response and offer to provide additional requested documentation.

26. Almost three years have passed since Plaintiffs first suffered damage to the Property as a result of the wind and hailstorm on June 20, 2020. Because Defendant and Mr. Lochridge refuse to honor the contingency agreed upon in the Umpire's Estimate, Plaintiffs' Claim goes unresolved. Further, the Property's unreplaced roof faces the risk of additional damage each day that the Award goes unaddressed. Thus, Plaintiffs have been harmed and will continue to be harmed by

Defendant's delays and refusal to engage in the appraisal procedures as required in the Umpire's Estimate, the Award, and Defendant's own Policy.

27. In addition to these losses and future risk of losses, Plaintiffs have been forced to retain the undersigned counsel to represent it in connection with this action. Plaintiffs have already incurred reasonable and necessary attorney's fees and expenses in connection with this action. Those expenses and fees continue to accumulate, and Plaintiffs are entitled to reimbursement of all of its reasonable and necessary attorney's fees and expenses incurred by Plaintiffs in this matter.

28. All conditions precedent to the filing of this true and bringing the claims below have occurred.

## IV.
## CAUSES OF ACTION

29. Plaintiffs incorporate each of the preceding paragraphs into each cause of action.

A. **Breach of Contract**

30. Defendant had a contract of insurance with Plaintiffs. Plaintiffs fully performed all contractual obligations under the Policy and timely paid all premiums to Defendant. Defendant breached the terms of that contract by refusing to comply with the appraisal provisions of the Policy.

31. Specifically, Defendant's appraiser, the umpire, and Plaintiffs' appraiser all agreed that the Award would be revised and supplemented in accordance with the Policy's appraisal provision if the City prevented the repairs as contemplated in the initial Award. The Policy expressly provides that a "decision agreed to by any two [appraisers] will be binding." *See* Ex. A. Each appraiser agreed that Award would be revised in accordance with the Policy's appraisal provision if the repairs could not be performed due to City codes. By the Policy's own terms, that decision became binding. Defendant breached the Policy contract by refusing to participate in the appraisal process

to revise and supplement the Award in accordance with the appraisers' binding decision in entering the contingent Award.

32. As a result of Defendant's breach of contract, Plaintiffs have sustained financial harm and have lost the expected benefit of the Policy had Defendant performed as required. Plaintiffs seek to recover the amounts it should have been paid under the terms of the Policy and for all consequential or other damages available at law or in equity.

B. **Prompt Payment of Claims Statute**

33. Almost three years have passed since Plaintiffs first suffered damage to the Property as a result of the wind and hailstorm on June 20, 2020. In September 2021, Mr. Owens first notified Defendant's appraiser that the Award needed to be revised pursuant the appraiser's agreement. A year later, Plaintiffs sent its first demand letter to Defendant demanding that Defendant participate in an updated appraisal process as contemplated. Now, years later, Defendant has refused, and continues to refuse, to participate in the updated appraisal process and has not made payment of the Claim.

34. Defendant has delayed payment of the Claim for more than 60 days after receiving all items, statements, and forms needed to participate in the appraisal process and make payment of the Claim. *See* Tex. Ins. Code Ann. § 542.058(a).

35. Defendant never notified Plaintiffs of its acceptance or rejection of the Claim after entry of the Award. *See* Tex. Ins. Code Ann. § 542.056(a).

36. The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage for the Claim in connection with implementation of the agreed-upon updated appraisal constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

37.  Plaintiffs, therefore, in addition to Plaintiffs' claim for damages, are entitled to interest and attorneys' fees as set forth in 542.060 of the Texas Insurance Code.

C.  **Bad Faith/Unfair Settlement Practices**

38.  Plaintiffs and Defendant are both persons under Texas Insurance Code Section 541.002(2).

39.  Defendant is required to comply with Chapter 541 and a tie-in provision of the Texas Insurance Code.

40.  Defendant misrepresented that the Award would be revised and supplemented in accordance with the Policy's appraisal provision if the City prevented the repairs to occur as contemplated by the Award. Defendant's refusal to participate in the revised appraisal process as contemplated and agreed upon by the parties through their respective appraisers constitutes a bad faith act and fraudulent inducement to get Plaintiffs' appraiser to agree to the Award. Defendant has not provided any reasonable explanation for its denial of the Claim or refusal to participate in the revised appraisal process as contemplated and agreed upon. Defendant has refused to even investigate the Claim as it relates the City's refusal to permit the repairs as contemplated.

41.  Defendant violated Section 541.051 of the Texas Insurance Code by making statements misrepresenting the terms and/or benefits of the policy.

42.  Defendant violated Section 541.060 by:

   (i)   misrepresenting to Plaintiffs a material fact or policy provision relating to coverage at issue;

   (ii)  failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

   (iii) failing to promptly provide to Plaintiffs a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

  (iv) failing within a reasonable time to affirm or deny coverage of a claim to Plaintiffs or submit a reservation of rights to Plaintiffs; and

  (v) refusing to pay the claim without conducting a reasonable investigation with respect to the claim.

43. Defendant violated Section 541.061 by:

  (i) making an untrue statement of material fact;

  (ii) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

  (iii) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

  (iv) making a material misstatement of law; and

  (v) failing to disclose a matter required by law to be disclosed.

44. Defendant's violations of Chapter 541 of the Texas Insurance Code enumerated above caused damages to Plaintiffs in at least the amount of policy benefits wrongfully withheld.

45. Defendant knowingly committed the acts complained of. As such, Plaintiffs are entitled to exemplary and/or treble damages pursuant to Texas Insurance Code Section 541.152(a)-(b).

D. **DTPA**

46. Defendant's actions as outlined above in refusing to participate in an updated appraisal constitutes a violation of the Texas Insurance Code, which is a tie-in statute to the Texas Deceptive Trade Practices And Consumer Protection Act ("DTPA"). See Tex. Ins. Code Ann. § 541.151. As a result of defendant's actions and conduct, Plaintiffs have suffered monetary damages. Because Defendant knowingly and intentionally violated a tie-in statue to the DTPA, Plaintiffs are entitled to obtain treble damages.

E.  **Promissory Estoppel**

47.  Defendant's appraiser promised Plaintiffs' appraiser that the Award would be revised in accordance with the Policy's appraisal provision if the City prevented the repairs to occur as contemplated in the Award. Based on Plaintiffs' appraiser's numerous communications to Defendant's appraiser regarding the need to make the Award contingent based upon the City's building code determination, Defendant's appraiser should have foreseen that Plaintiffs' appraiser would rely on Defendant's appraiser's promise to make the Award contingent. Plaintiffs' appraiser actually, substantially, and reasonably relied on that promise in signing the Award, reasonably believing it to be contingent upon the City's determination. Justice requires that Defendant's appraiser's promise that the Award be contingent upon the City's building code determination be enforced.

F.  **Set Aside Appraisal Award**

48.  For the reasons set forth herein, Plaintiffs are entitled to have the Award set aside and an Order for an updated appraisal, and the Defendant is estopped to deny that relief because of the appraisers' intent and agreement, including Mr. Lochridge's express intent and agreement, to revise and supplement the appraisal and Award in the event the City did not allow the repairs as contemplated in the Award.  Alternatively, Plaintiffs are entitled to have the Award set aside and an Order for an updated appraisal, as the appraisers intended to include contingency language regarding the potential City building code issues in the Award itself, but mistakenly or accidently failed to do so. As such, the Award does not reflect the intent of the appraisers and the Umpire concerning the amount of loss, and the Award should be set aside.

# V.
# DAMAGES

49. Plaintiffs seek damages in excess of $75,000. Plaintiffs seek recovery of all its actual, exemplary, punitive, economic, treble, and statutory damages and interest to which it is entitled under applicable law.

# VI.
# ATTORNEYS FEES

50. Plaintiffs engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

51. Plaintiffs are entitled to recover its reasonable and necessary attorneys' fees incurred herein pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, under the applicable provisions of the Texas Insurance Code, and under applicable common law.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, upon final hearing of the case:

a. that the court compel Defendant to participate in a re-appraisal;

b. that the Award be set aside, overturned, and vacated;

c. that the Court enter an Order that an updated appraisal is to take place;

d. that Plaintiffs recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence;

e. that Plaintiffs be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, statutory interest, mental anguish, exemplary and treble damages; AND

f. that Plaintiffs be awarded such other and further relief, general or special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**MULLIN HOARD & BROWN, LLP**
MARK S. LOGSDON, SBN 00795486
MITCH CARTHEL, SBN 03940550
ASHLEY HAMILTON, SBN 24115257
MARK A. GLAWE, SBN 24116430
500 S. Taylor St., Suite 800
Amarillo, Texas 79101-1656
(806) 372-5050 telephone
(806) 372-5086 facsimile
mlogsdon@mhba.com
mcarthel@mhba.com
ahamilton@mhba.com
mglawe@mhba.com

By: */s/* Mark S. Logsdon
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I certify that on April 12, 2023, a true and correct copy of the foregoing document was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/* Mark S. Logsdon
*Attorneys for Plaintiff*